McJUNKIN CORPORATION, Appellant,

v.

CITY OF ORANGEBURG, Appellee.

No. 7268.

United States Court of Appeals Fourth Circuit.

Argued Oct. 19, 1956.
Decided Nov. 13, 1956.

John H. Lumpkin, Columbia, S. C. (Boyd, Bruton & Lumpkin, Columbia, S. C., on the brief), for appellant.

Hugo S. Sims, Jr., Orangeburg, S. C. (Rosen, Horger & Sims, Orangeburg, S. C., on the brief), for appellee.

Before PARKER, Chief Judge, and FAHY and SOBELOFF, Circuit Judges.

SOBELOFF, Circuit Judge.

The City of Orangeburg, South Carolina, is in controversy with McJunkin Corporation, a body corporate of West Virginia, which for a consideration of $203,876.70 agreed to supply the city with pipe for a municipal gas system. There is no dispute as to the quantity or quality of the material furnished, but in making payment the city deducted $6,151.02, 3% of the contract price, which the city paid the State of South Carolina as a use tax on the pipe furnished it by the appellant.

The South Carolina Code, § 65–1401, imposes a 3% sales tax on retail sales in that State. This is supplemented by a use tax, Section 65–1421, on the storage, use or other consumption in that State of personal property purchased at retail "regardless of whether the retailer is or is not engaged in business in this State." Double taxation is avoided by providing, Sections 65–1422 and 1425, that the user shall be relieved of liability for the use tax on property subject to the sales tax and on which the tax has been paid, or when the retailer has given the purchaser a receipt for the same.

It is the City's position that the appellant was obligated by the contract to include the amount of the sale or use tax in its total bid. Denying that it had such an obligation, the appellant sued to be reimbursed for the deduction made by the City from the contract price. The District Court, sitting without a jury, agreed with the City's contention and

dismissed the complaint. Thereupon the contractor appealed.

The original specifications prepared by the City contemplated and invited bids from contractors who would offer to do a complete installation; that is to say, they would "provide all labor, materials and equipment necessary to the construction" of the natural gas distributing system. It was later decided to ask for bids according to several alternative proposals, and addenda to the specifications were issued. Among these was Addendum No. 2, with which we are concerned. It included a series of alternative bases for bidding, one of which, known as Proposal F, called for the bidder merely to supply pipe and to perform no labor. The appellant, whose only business was selling pipe, made its bid accordingly and was the successful bidder.

It is undisputed that when the appellant's bid was accepted a formal written contract was entered into, which referred to the original specifications as a part thereof. A number of documents were physically attached to the contract by stapling, and included among these were the original specifications. The core of the dispute between the parties is whether or not the original specifications are a part of the contract and if the bidder was under obligation to include the South Carolina 3% sales or use tax in the bid price.

The original specifications contain the following paragraphs concerning taxes:
"2.07 Bid Price:

"The price bid shall cover furnishing of all materials, tools, labor, transportation, local State and Federal taxes; Old Age Benefit, Social Security, services and equipment necessary to construct the work in full conformity with Plan, these Specifications, Addenda and Contract Documents."
"2.13 Taxes, Permits, Certificates and Laws:

"All Federal, State and local taxes due or payable during the time of contract on materials, equipment, or labor in connection with this work must be included in the amount bid by the Contractor and shall be paid to proper authorities before acceptance."

Addendum 2 also contains (in a paragraph number 9) a reference to taxes:
"9. *Furnishing Steel or Cast Iron Pipe to Owner:*

"Payment: Pipe furnished to the Owner, measured as provided above, shall be paid for at the Contract unit price per linear foot, which price and payment shall constitute full compensation including all taxes for furnishing and hauling to Orangeburg, South Carolina and for performance of all work necessary to complete the item in accordance with Plans and Specifications."

With these excerpts before us we have the documentary material out of which the dispute arises. The parties agree only that the case is governed by the contract between them, but they sharply disagree as to what document or documents constitute the contract. The appellant maintains that Addendum 2 supersedes the original specifications, and is alone controlling. Its argument is that section 9 of Addendum 2 is the sole basis for determining what taxes the contractor is to include in the bid, and it does not specifically refer to sales or use taxes. The appellant points out in this connection that as its business is only that of a supplier of pipe, and it does not install any materials, it could not have bid on the original specifications. These specifications, it says, are applicable only to contractors who install as well as supply pipe.

The appellee on the other hand, claims that the original specifications, except where modified by the addenda, are part of the contract, and that the provisions of paragraphs 2.07 and 2.13 of the original specifications, requiring inclusion of all sales or use taxes in the bid price are not superseded by paragraph 9 of Addendum 2. In this view the Addendum is not an outright substitution, but, as the word implies, an addition, the two

sets of provisions as to taxes being supplementary.

■ True, as the appellant contends, Addendum 2 to the specifications listed changes which "shall be considered as included in the original specifications, and shall take precedence over any part of the original Specifications and Plans *in conflict therewith*." (Italics supplied.) We do not agree, however, that Addendum 2 entirely supersedes the original specifications. We cannot accept the proposition that when the Addendum was made a part of the original specifications the latter ceased to exist. The original specifications are, it seems to us, confirmed to the extent that there is no inconsistency between the two documents. It does not avail the appellant that certain provisions of the original specifications are in terms or in practical operation inapplicable to Proposal F of Addendum 2, the alternative plan adopted in the awarded contract. Such provisions of the original specifications as are reasonably applicable and are consistent with the Addendum, are a part of the contract according to the language of the Addendum itself.

It is also true that the draftsmen of the original specifications had in mind a single contract for all needed material and labor, while Addendum 2 contemplated splitting up the job into several awards. The change in the scope of the contract awarded does not expunge any items or conditions of the original specifications not in conflict with the Addendum.

■ We therefore cannot adopt the appellant's interpretation that paragraph 9 of Addendum 2 means that the contract price shall include taxes for furnishing and hauling and only such taxes, and that this paragraph is intended to overcome the broad provisions of paragraphs 2.07 and 2.13 of the original specifications. Furthermore, a more reasonable interpretation, we think, is that the word "compensation" was to include the cost of furnishing and hauling as well as all taxes; that is to say, that the two phrases "furnishing and hauling" and "including all taxes" were each meant to modify the word "compensation." It would have been clearer if the words "including all taxes" had been set off by commas, but the omission of the commas does not destroy the meaning. Even if we were to accept the appellant's premise that the paragraph was designed to include taxes for "furnishing and hauling" it would not follow that all other taxes referred to in the original specifications were thereby meant to be excluded. In any event we perceive no conflict between the Addendum and the provisions of the original specifications, or any reason why both cannot or should not be given effect.

The appellant contends that paragraph 9 of Addenum 2 stands alone and covers only tax obligations of the supplier and not those of the City. From this premise the appellant further submits that as it is an out of state vendor, it is not subject to the South Carolina use tax, citing Miller Bros. Co. v. State of Maryland, 347 U.S. 340, 74 S.Ct. 535, 98 L.Ed. 744. The question in that case was the asserted authority of the State of Maryland to require Miller, a foreign retailer, to be its agent to collect the use tax from Maryland residents who made purchases from Miller in Delaware. The Supreme Court denied such authority in the State of Maryland. No such problem is raised on this Record. The State is not attempting to collect any tax from the appellant or to make it the State's agent in collecting any tax due by its customer. Nor are we under the necessity of deciding a constitutional question with respect to the liability of foreign retailers for the South Carolina sales, use or other tax. The appellant's obligation to the appellee to include the 3% tax in its bid has a sufficient basis in the contract between them.

■ Quite obviously the City sought to elicit bids that would include all taxes incident to the transaction so that when it had paid the contract price it would not be held for taxes in addition. Moreover, the City endeavored to put all

bidders on a parity. The desired result could not be attained if some bidders included the sales tax while others did not. If the accepted bid did not include the sales or use tax, the City would be called upon to bear the additional burden of the State's 3% tax. That the city's purpose was to avoid this result is implicit in the contract documents taken together.

■ We find no illegality or impropriety in the city's requiring its bidders to include the use tax as well as other taxes in their bid prices. The South Carolina statutory provision cited to us by the appellant, section 65–1426, S.C. Code 1952, which requires the seller of an article to display the tax separately from the price thereof, has no bearing on the question before us. This has relation to the sales tax only and not to the use tax and is inapplicable to the present situation. Assuming that what the parties here agreed upon constituted the assumption by the supplier of the tax burden of the City, we perceive nothing to prevent such an arrangement. However, what the specifications require is not necessarily to be regarded as a shifting of the incident of a tax from the City to the supplier. Rather it was intended that the supplier should pay the State out of the contract price which included the tax item, and it was further intended that the supplier should not pocket the sum and have the City pay a second time, this time to the State.

In any event the City primarily intended and had the right to require bids to be submitted upon a uniform basis calling either for the inclusion or exclusion of a particular tax so that comparisons could be made before awarding a contract. The Record shows that if the appellant's bid is construed not to include the 3% tax, then a bid lower than the appellant's was made by a competitor who did include the tax. If this competing bid had been accepted the appellee would not have been required to bear the tax twice, which is the net effect of its payment to South Carolina, if the appellant should prevail. It is not open to question that this lower net bid would have been accepted, and not the appellant's, if it were thought that the appellant had not by its bid obligated itself to pay the 3% tax out of the contract price.

In their briefs and oral arguments the parties united in calling the contract unambiguous but, as they disagree upon which documents constitute the contract, they not surprisingly hold diametrically opposing views as to what the so-called "unambiguous" contract means. Each, however, proposes a method of resolving any ambiguity that might be held to exist. The appellant says that the rule would be for the contract to be construed against its adversary, the City which prepared it.

■■ The appellee maintains that if the contract should be declared ambiguous, the resolution of the ambiguity should be made by considering parol testimony, which it tendered in order to fortify its interpretation of the contract. The proffered testimony tended to show that it was publicly stated before the opening of the bids in the presence of the appellant's representative, that if any bidder had failed to include the sales or use tax in the bid price, this fact should be made known; yet the appellants remained silent. It was also testified that two officials of the appellant were reminded at the signing of the formal contract, that the bid should include the sales or use tax, and still no objection was made by the corporate officers. The Court received this testimony, taking the appellant's objection under advisement. At the conclusion of the case the Judge declared that it was unnecessary to rule on the admissibility of this testimony inasmuch as he had concluded that the contract was too clear and unambiguous to require clarification by parol testimony. It is of course settled law that where there is no ambiguity no parol testimony is proper. Wigmore, 3rd Ed. section 2461.

Even were we to disagree with the District Judge and say that the contract is not as clear as we think it is, the testimony, which seems to be undisputed,

would fully sustain the action of the Court below.

We therefore hold that the appellant was under a duty to include the amount of the tax in its bid, and accordingly, the judgment will be

Affirmed.